**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

GLENNA HELTON,                                              :

                         Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.                 :

Case No. 3:09-cv-321

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938);  *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this

case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently

engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD in September, 2005,  alleging disability from March 11, 2005, due to manic depression, bipolar disorder, asthma, and high blood pressure. *See* Tr. 54-58; 69. Plaintiff's application was denied initially and on reconsideration. *See* Tr. 36-44. Plaintiff filed an application for widow's insurance benefits on October 31, 2007, which was escalated to the hearing level. *See,* Tr. 377-79.  A hearing was held before Administrative Law Judge Thomas McNichols, (Tr. 395-433), who determined that Plaintiff is not disabled within the meaning of the Act. (Tr. 16-28). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that she meets the insured status requirements of the Act through December 31, 2010.  (Tr. 19,  ¶ 1).

Judge McNichols also found that Plaintiff has severe intermittent low back pain due to possible arthritis, asthma, a bipolar disorder with associated anxiety, and obesity, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (*Id.,* ¶ 3; Tr. 20, ¶ 4). Judge McNichols found further that Plaintiff has the residual functional capacity to perform a reduced range of light work. (*Id.*, ¶ 5). Judge McNichols then used sections 202.21 (prior to age 50) and 202.14 (since age 50) of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 27, ¶ 10). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28).

The record contains a copy of the office notes from treating physician Dr. Van Jura dated November, 2004, through October, 2006. (Tr. 167-99). Those notes reveal that Dr. Van Jura treated Plaintiff for various complaints and medical conditions including bladder problems, flee bites, cold symptoms, allergies, wrist pain, back pain, hypertension, thyroid impairment, anxiety, depression, and mania. *Id.* On February 12, 2007, Dr. Van Jura reported that she first treated Plaintiff on November 3, 2004, and last treated her on August 9, 2006, and that her diagnoses were bipolar disease, fatty liver with increased liver function tests, COPD, hypertension, hyperthyroidism, low back pain and hypercholesterolemia. *Id.* Dr. Van Jura also reported that Plaintiff's bipolar disease caused her to miss medication doses, that she did not follow-up with appointments, that due to her noncompliance with medical treatment her pain was not controlled, and that she was not able to perform many work-related mental activities. *Id.* Dr. Van Jura opined that Plaintiff had moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration,

persistence, or pace. *Id.*

On November 18, 2005, x-rays of Plaintiff's cervical, thoracic, and lumbar spines revealed multilevel spondylosis and disc space narrowing and L5 facet arthropathy. (Tr. 188).

The record contains a copy of Plaintiff's mental health treatment notes dated May, 2005, through April, 2008, from New Perspectives where she received treatment from psychiatrist Dr. Moon and a mental health therapist. (Tr. 128-32; 221-64; 276-81).  When he first evaluated Plaintiff on May 18, 2005, Dr. Moon reported that she was disheveled, displayed psychomotor agitation, had an anxious, sad, and somewhat labile affect, her mood was reported as ranging from euphoria to dysphoria with periods of tearfulness and agitation, and that her speech and thought processes were rambling and sometimes circumstantial. *Id.*  Dr. Moon also reported that Plaintiff's  fund of knowledge was poor, she had problems with concentration and well as memory, her insight was restricted, and that her judgment was poor. *Id.*  Dr. Moon noted that Plaintiff had a low support system and he identified her diagnoses as bipolar I disorder, most recent episode depressed with mood incongruent and psychotic features and panic disorder with agoraphobia.  *Id.*  Dr. Moon assigned Plaintiff a GAF  of 40 to 45. *Id.*  Over time, Dr. Moon and her therapist observed that Plaintiff had problems with conversation, was tearful during sessions, and was anxious, agitated, and depressed.  *Id.*

On December 1, 2005, Plaintiff's therapist  reported that Plaintiff had poor grooming, her speech was often circumstantial, her mood was euphoric to dysphoric, she was anxious, sometimes labile, sad, irritable, and that she experienced road rage.  *Id*.  The therapist also reported that Plaintiff had poor concentration and memory, her insight and judgment were limited, and that she had problems with impulse control. *Id.*   The therapist identified Plaintiff's

5

diagnoses as bipolar, depressed with incongruent mood and psychotic features and a panic disorder with agoraphobia. *Id.* The therapist concluded that Plaintiff had poor adaptation and coping skills and that she was unable to handle work stresses. *Id.*

In June, 2006, Dr. Moon reported that Plaintiff's diagnoses were bipolar disorder and panic disorder, that she had severe depression which lasted months and then manic episodes that would last a few weeks, that she was depressed, she had feelings of hopelessness, low motivation, dysphoria, and a lack of energy, and that during periods of mania, she had problems sleeping and was euphoric and hyperactive. *Id.* Dr. Moon also reported that Plaintiff had poor concentration and short-term memory, tended to be anxious and irritable with angry outbursts, and had an extremely poor ability to tolerate routine daily stressors and work-place stressors. *Id.* Dr. Moon assigned Plaintiff a current GAF of 50-55, with a past GAF of 55-60. *Id.*

In February, 2007, Dr. Moon reported that Plaintiff's condition still fluctuated, her prognosis was guarded, her condition deteriorated when she couldn't afford her medications, and that she was unable to keep all her appointments because of transportation problems. *Id.* Dr. Moon opined that Plaintiff had a poor ability to deal with the public, use judgment, deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out detailed and complex job instructions. *Id.* Dr. Moon also opined that Plaintiff had a fair ability to relate to others, understand, remember, and carry out simple job instructions, and that she had a good ability to follow work rules and function independently. *Id.*

Examining physician, Dr. Danopulos reported on January 3, 2006, that Plaintiff moved around the examination room freely, had normal movements dressing, undressing, and

otherwise, demonstrated a normal gait, and that she had painful lumbar, dorsal, and cervical spines to pressure, positive bilateral straight leg raising test, and reduced ranges of motion. (Tr. 118-22). Dr. Danopulos also reported that squatting and rising resulted in Plaintiff experiencing lower back pain, and that she was able to toe and heel walk. *Id.* Dr. Danopulos noted that the objective findings indicated that Plaintiff had early cervical, dorsal, and lumbar spine arthritis, well-controlled hypertension, morbid obesity, and a history of bipolar disorder. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform work activity was limited by her morbid obesity and early arthritis. *Id.*

Examining psychologist Dr. Flexman reported on January 24, 2006, that Plaintiff was disheveled, and anxious, depressed, and cooperative and that she had fair eye contact. (Tr. 133-36). Dr. Flexman also reported that Plaintiff was oriented, and that her attention span was poor. *Id.* Dr. Flexman noted that Plaintiff displayed overt pain behavior when walking, her intellectual functioning was judged to be average, her concentration was fair, her memory was good, her judgment for ordinary daily affairs was fair, and that obsessive thinking concerning somatic or other psychological problems was judged to be out of proportion with reality, and that somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as bi-polar disorder, NOS and borderline personality and he assigned Plaintiff a GAF of 53. *Id.* Dr. Flexman opined that Plaintiff was slightly impaired in her abilities to understand, remember, and carry out short, simple instructions, to make judgments for simple, work-related decisions, to sustain concentration, was markedly impaired in her ability to interact appropriately with the public, and was moderately impaired in her abilities to interact appropriately with others and in her ability to respond appropriately to work pressures in a normal work setting. *Id.*

The record contains treating physician Dr. Reitz's clinical notes dated November, 2006, through May, 2008. (Tr. 215-20, 268-75, 303-53). Those notes reveal that Dr. Reitz treated Plaintiff for various medical complaints and conditions including type two diabetes, chest pain, hypertension, hyperlipidemia, lower back pain, shoulder pain, and bipolar disorder. *Id.* In March 2007, Dr. Reitz reported that Plaintiff was able to lift and carry up to five pounds occasionally, and no weight frequently, stand and/or walk for one hour in an eight-hour day, and for fifteen minutes without interruption, sit a for four hours in an eight-hour day, and for one hour without interruption, and occasionally climb and balance, but never crouch, kneel, crawl, or stoop. (Tr. 200-14). Dr. Reitz also reported that Plaintiff was not able to perform sedentary work as a result of her bipolar disorder. *Id.* Dr. Reitz reported further that Plaintiff was not able to perform most work-related mental activities. *Id.* Dr. Reitz noted that Plaintiff had been recently diagnosed with diabetes and that she had significant signs/symptoms of diabetes, but did not recognize or seek treatment due to her mental impairments and that she had poor insight into her illnesses. *Id.* Dr. Reitz noted further that Plaintiff was moderately restricted in activities of daily living, markedly restricted in maintaining social functioning, and markedly limited in her ability to maintain concentration, persistence, or pace. *Id.*

Lumbar spine x-rays taken on May 15, 2008, revealed osteophytic spurring and some sclerosis in the lower facets. (Tr. 302).

Plaintiff sought emergency room treatment for an accidental overdose of Xanax in May, 2008. (Tr. 282-301). The treating physician described Plaintiff as depressed, lethargic and disheveled and having minimal speech, brief eye contact, flat affect, limited judgment, and fair insight. *Id.* Plaintiff was discharged with instructions to contact her therapist. *Id.*

On June 5, 2008, Plaintiff underwent a myocardial nuclear perfusion imaging which revealed possible pulmonary hypertension. (Tr. 375). On June 16, 2008, Plaintiff underwent an echocardiogram which revealed a small LV cavity, mild LVH with normal systolic function, mild aortic valve and mitral leaflet sclerosis, and a right ventricle and right atrium of normal sizes, probable mild RVH with a mild degree of tricuspid regurgitation, and normal estimated pulmonary artery pressures. (Tr. 374).

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to give the appropriate evidentiary weight to Drs. Reitz's, Van Jura's and Moon's opinions, and by relying instead on examining physician Dr. Danopulos' opinion and the reviewing physician's opinion as well as examining psychologist Dr. Flexman's and the reviewing physicians' opinions. (Doc. 9). Essentially, Plaintiff's position is that the Commissioner erred by weighing the medical evidence of record.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, quoting, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), quoting, 20 C.F.R. § 404.1527(d)(2).

9

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rul 96-2p, 1996 WL 374188 at *5. "The *Wilson*

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

> The *Wilson* court instructs that where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation. *See Wilson.* 378 F.3d at 547. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Id.* However, the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in "meaningful review" of the ALJ's decision. *Id.* at 544.

*Blakley,* 581 F.3d at 409.

Judge McNichols rejected Dr. Reitz's opinion that Plaintiff is not capable of performing even sedentary work because that Dr. Reitz based her opinion on Plaintiff's

11

subjective allegations and did not support her opinion with any objective medical evidence or clinical findings. (Tr. 23).

Although Dr. Reitz essentially opined in March, 2007, that Plaintiff had a residual functional capacity that was inconsistent with the ability to perform substantial gainful activity, she did not support her opinion with any clinical findings. In offering her opinion, the medical information Dr. Reitz referred to was osteoarthritis of Plaintiff's back in restricting Plaintiff's lifting, standing and walking. Dr. Reitz indicated Plaintiff's seeing was restricted due to worsening vision due to diabetes, her speaking was slurred due to her medication, and carpal tunnel syndrome affected her fine motor skills (Tr. 202). However, x-rays show, at worst, mild degenerative changes, with no evidence of any disc herniation, fracture, or acute spinal pathology. *See* Tr. 127, 188, 302. Judge McNichols also found that Dr. Reitz's opinion presupposes that Plaintiff "is partially bedfast", which he found inconsistent with her testimony. (Tr. 22).

In addition, a review of Dr. Reitz's office notes reveal that they contain few objective clinical findings. Further, the Court notes that Dr. Reitz's office notes reveal that she saw Plaintiff on only four occasions prior to offering her opinion in March, 2007. *See* Tr. 215-17.

In addition to not being supported by her objective clinical findings, Dr. Reitz's opinion is inconsistent with the other evidence of record. For example, examining physician Dr. Danopulos reported very minor range of motion deficits in Plaintiff's lumbar spine and that Plaintiff exhibited no evidence of nerve root compression or other peripheral neuropathy. (Tr. 121). Further, Dr. Reitz's opinion is also inconsistent with the reviewing physician's opinions.

Under these facts, the Commissioner did not err by rejecting Dr. Reitz's opinion that Plaintiff is disabled by her physical impairments.

Turning to Plaintiff's alleged mental impairment, Judge McNichols rejected Drs. Reitz and Van Jura's opinions on the bases that they are family physicians who saw Plaintiff for physical complaints, neither physician is a psychiatrist, psychologist, or other mental health professional qualified to assess Plaintiff's level of psychological functioning, and neither Dr. Reitz nor Dr. Van Jura provided ongoing treatment for Plaintiff's bipolar symptoms, and thus lack any longitudinal knowledge of her treatment history. *Id.*

Indeed, Dr. Reitz and Dr. Van Jura are family physicians and their opinions as to Plaintiff's mental impairments is outside their areas of expertise. Standing alone, they would not provided a basis for finding that Plaintiff is disabled by her mental impairments. However, as discussed below, Drs. Reitz' and Van Jura's opinions lend support to Dr. Moon's opinion that Plaintiff is disabled by her mental impairments.

In rejecting Dr. Moon's opinion, , Judge McNichols essentially determined that it was not supported by his treatment notes and contrary to the overall weight of the evidence. (Tr. 24-25). This Court disagrees.

Dr. Moon has been Plaintiff's long-term treating psychiatrist. *See* Tr. 221-64, 276-81. Dr. Moon has essentially opined that Plaintiff is disabled, and his opinion is consistent with the record. For example, treatment notes frequently and consistently reflect that Plaintiff had poor grooming, her speech was often circumstantial, her mood was euphoria to dysphoria, she was anxious, sometimes labile, sad, irritable, and that she experienced road rage. (Tr. 128-32). In addition, those notes reveal, again frequently and consistently, that Plaintiff exhibited

13

poor concentration and memory, her insight and judgment were limited ,and that she had problems with impulse control. *Id.* In addition, consistent with Plaintiff's mental health treatment notes, over time, Plaintiff was consistently assigned a GAF indicating moderate to serious impairments. Dr. Moon's opinion is supported by and consistent with Drs. Reitz' and Van Jura's opinions. *See, supra.*

Judge McNichols emphasized, that Plaintiff was non-compliant with both medications and treatment. Essentially, Judge McNichols equates the gaps in treatment either to improvement in Plaintiff's symptoms or to the non-restricting impact these impairments have on her work life, without relying on substantial supporting evidence. However, the record reveals that Plaintiff's treating sources attribute Plaintiff's non-compliance to her mental illnesses. "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evinces a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Commissioner of Social Sec.*, 572 F.3d 272, 283 (6th Cir. 2009), citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 ( 8th Cir. 2009); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)(it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation).

The only opinions which arguably contradict long-term treating psychiatrist Dr. Moon's opinion are the opinions of the examining psychologist Dr. Flexman and the reviewing psychologist. *See* Tr. 138-55. Under the facts of this case, the Commissioner erred by rejecting the opinions of Plaintiff's treating psychiatrist and by relying, instead, on the opinions of the examining psychologist and the reviewing psychologist.

Under these facts, the Commissioner erred by rejecting Dr. Moon's opinion that Plaintiff is disabled by her mental impairments. Therefore, the Commissioner's decision is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, Dr. Moon has been Plaintiff's long-term treating psychiatrist and he has essentially opined that Plaintiff is not capable of performing substantial gainful activity, and his opinion is supported by the objective medical evidence and is consistent with the other evidence of record. As noted above, the only evidence which arguably contradicts Dr. Moon's opinion are the opinions of the examining and reviewing psychologists.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits

consistent with the Act.

June 22, 2010.

s/ **Michael R. Merz**<br>United States Magistrate Judge

J:\Social Security - Drafts\Helton_SSD.wpd

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).